IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(1) HOUSING AUTHORITY OF THE TOWN OF LONE WOLF, (2) DAVID M. HAYNES, and (3) MYRNA HESS,<br><br>Defendants. | Civil No. CIV-20-1256-J<br><br><br>**Demand for Jury** |

## COMPLAINT

The United States of America alleges as follows:

### NATURE OF ACTION

1.      The United States brings this action to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 ("Fair Housing Act" or "FHA"). The United States brings this action on behalf of Alexandra Zackery, her minor child, A.Z., and Legal Aid Services of Oklahoma, Inc. ("Legal Aid") pursuant to 42 U.S.C. § 3612(o) following an investigation and charge of discrimination by the Department of Housing and Urban Development ("HUD") and Legal Aid's election to proceed in federal district court.

2.      The United States also brings this action pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d-7; the Title VI implementing regulation

issued by HUD, 24 C.F.R. Part 1; and Title VI contractual assurances, because the

Housing Authority of the Town of Lone Wolf (the "Housing Authority"), and its agents,

David M. Haynes and Myrna Hess, discriminated against prospective residents on the

ground of race.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345,

42 U.S.C. § 3612(o), 42 U.S.C. §§ 2000d to 2000d-7, 24 C.F.R. § 1.8(a), and 28 C.F.R.

§ 42.108.

4.      Venue is proper under 28 U.S.C. § 1391(b), because (1) all Defendants

reside in the Western District of Oklahoma; (2) the claims alleged herein arose in the

Western District of Oklahoma; and (3) the property that is subject of the action is situated

in the Western District of Oklahoma.

## THE PARTIES

5.      Defendant Housing Authority is a federally-funded Low-Income Public

Housing program operating approximately twenty-five housing units located at 901

Walker Circle, Lone Wolf, Oklahoma.

6.      The housing units operated and leased by the Housing Authority are

"dwellings" within the meaning of 42 U.S.C. § 3602(b).

7.      The Housing Authority receives federal financial assistance from HUD.

8.      The Housing Authority is governed by a five-member Board of

Commissioners (the "Board").

9.     Defendant David M. Haynes ("Mr. Haynes") was employed as the Executive Director of the Housing Authority at the time of the actions described herein. Mr. Haynes resides in Lone Wolf, Oklahoma.

10.     Mr. Haynes was acting within the course and scope of his employment with respect to his actions described herein.

11.     Defendant Myrna Hess ("Ms. Hess") was employed as the Program Assistant of the Housing Authority at the time of the actions described herein. Ms. Hess resides in Lone Wolf, Oklahoma.

12.     Ms. Hess was acting within the course and scope of her employment with respect to her actions described herein.

13.     At all relevant times, Mr. Haynes supervised Ms. Hess in her duties as Program Assistant for the Housing Authority.

14.     At all relevant times, Mr. Haynes participated in the day-to-day operations of the Housing Authority, including but not limited to, performing maintenance, managing of the property, monitoring and managing housing availability, engaging with prospective residents seeking housing, and approving and denying rental applications.

15.     At all relevant times, Ms. Hess participated in the day-to-day operations of the Housing Authority, including but not limited to, monitoring and managing housing availability, engaging with prospective residents seeking housing, processing lease applications, maintaining records, and handling additional management responsibilities at times when Mr. Haynes was absent from the Housing Authority's rental office.

3

16.     At all relevant times, Mr. Haynes and Ms. Hess were employees of the Housing Authority and were authorized by the Board to lease the units of the Housing Authority.

## ALLEGATIONS REGARDING DEFENDANTS' DISCRIMINATORY PRACTICES

17.     Defendant Housing Authority operates twenty-five housing units: ten one-bedroom units, ten two-bedroom units, and five three-bedroom units.

18.     The Housing Authority receives annual federal financial assistance from HUD's Office of Public and Indian Housing. The Housing Authority received HUD funds in 2015 and has continued to receive annual HUD funding since that time.

19.     As a recipient of federal funds, the Housing Authority is responsible for ensuring—and it has made contractual assurances that it will ensure—that it will operate its housing program in a non-discriminatory manner and comply with federal law.

20.     Between 2015 and 2019, the Housing Authority had zero African-American heads of household leasing any of their housing units.

21.     HUD requires the Housing Authority to adopt, obtain HUD approval for, and maintain an Admission and Continued Occupancy Policy ("ACOP") outlining the Housing Authority's policies and procedures for filing vacancies.

22.     At all relevant times, the Housing Authority's ACOP has provided that two people may occupy a one-bedroom unit and further states that a "single head of household parent shall not be required to share a bedroom with his/her child, although they may do so at the request of the family." (emphasis in original).

A.     **Ms. Zackery and A.Z.'s Application for Housing**

23.     Alexandra Zackery ("Ms. Zackery") is an African-American woman who sought housing on behalf of herself and her minor child, A.Z., from the Housing Authority in 2015.

24.     In or about March, 2015, Ms. Zackery and her then-five-year-old daughter were homeless and staying at a shelter while they searched for stable and affordable housing.

25.     On or about March 4, 2015, a representative of Legal Aid contacted the Housing Authority on behalf of Ms. Zackery to inquire about housing availability at the Housing Authority.

26.     The Legal Aid representative spoke on the phone with Mr. Haynes and provided information about Ms. Zackery, her child, and her circumstances, but did not discuss Ms. Zackery's race.

27.     In that phone conversation, Mr. Haynes stated to the Legal Aid representative that housing unit(s) were available at the Housing Authority and could be occupied within a week.

28.     Mr. Haynes did not state to the Legal Aid representative that the Housing Authority had a waiting list.

29.     After the phone conversation, that same day, Mr. Haynes faxed a blank housing application to Legal Aid for Ms. Zackery to fill out and return.

30.     On March 5, 2015, Legal Aid faxed Ms. Zackery's completed application to the Housing Authority. On the first page of the application, where the form requested

that the applicant indicate the number of prospective household members of each "ethnic group," Ms. Zackery wrote the number "2" on the form next to the category "Black, not of Hispanic origin," indicating her and her daughter's race.

31.     The application did not ask how many bedrooms the applicant sought, and Ms. Zackery did not make any notation indicating that she was looking for a specific unit size.

32.     On or about March 16, 2015, and March 17, 2015, Legal Aid's representative called the Housing Authority to follow up on the status of Ms. Zackery's application, but did not reach Mr. Haynes or Ms. Hess.

33.     On or about March 17, 2015, Mr. Haynes signed and approved a form denial letter to Legal Aid in response to Ms. Zackery's application for housing. Under the "Eligible" header on the form denial letter, Mr. Haynes had checked the box stating that no units were available.

34.     On March 19, 2015, Ms. Hess faxed the form denial letter described above in paragraph 33 to Legal Aid.

35.     Additionally, on or about March 19, 2015, Ms. Hess contacted Legal Aid's representative by telephone to inform her that no units were available for Ms. Zackery and A.Z.

36.     Mr. Haynes and Ms. Hess's statements that no units were available for Ms. Zackery and A.Z., as described in paragraphs 33-35, were false.

37.     In March 2015 and during the time Ms. Zackery applied to the Housing Authority, Lone Wolf had at least three one-bedroom units (918, 919, and 923), and one

two-bedroom unit (934) that could have been rented to Ms. Zackery and A.Z. in accordance with Lone Wolf's ACOP.

38.     As a result of Defendants' unlawful conduct as described in this Complaint, Ms. Zackery and A.Z. suffered a loss of housing opportunities, emotional distress, and other harms.

**B.     Legal Aid's Testing**

39.     Legal Aid is a non-profit organization that provides civil legal assistance to low-income persons throughout Oklahoma. Legal Aid's activities include investigation, education, training, community engagement, and enforcement of fair housing discrimination claims. Legal Aid's mission is "to be a partner in the community making equal justice for all a reality."

40.     As a result of Ms. Zackery's experience with the Housing Authority, Legal Aid conducted testing to determine if the Housing Authority discriminated against potential residents on the basis of race.

41.     Testing simulates housing transactions by comparing similarly-situated home-seekers' experiences to determine if a housing provider treated the home-seekers differently, supplied different information or terms, and/or illegally discriminated based on race.

**1.     The White Tester's Visit**

42.     On November 4, 2015, a female white tester visited the Housing Authority to seek housing.

43.     When the white tester arrived at the property, Mr. Haynes greeted her
outside the office and directed her to Ms. Hess inside the office. Inside, Ms. Hess greeted
her and asked if she wanted to apply for housing. The tester stated that she was seeking
housing for herself and her four-year-old daughter. Ms. Hess asked Mr. Haynes to show
the white tester the available housing units.

44.     Mr. Haynes asked the white tester whether she wanted a one or two-
bedroom housing unit to which the tester replied that she was flexible and was interested
in the units available. Mr. Haynes then escorted the white tester to view three vacant units
at the Housing Authority: a one-bedroom unit (908) and two two-bedroom units (914 and
920). Mr. Haynes stated that each of the units was available and could be ready within a
couple of weeks for move-in.

45.     While showing the white tester the available units at the property, Mr.
Haynes asked the white tester about her daughter, pointed out other homes nearby with
children, and discussed maintenance of the grounds.

46.     When Mr. Haynes and the white tester returned to the Housing Authority
office, Mr. Haynes and Ms. Hess sat with the white tester to discuss the application
process, including the requirement of a background and a credit check. Ms. Hess
calculated the tester's rent portion for the one-bedroom and two-bedroom units based on
the tester's stated income.

47.     Ms. Hess described the application process to the white tester. Ms. Hess
made no mention that the Housing Authority maintained a zero-tolerance drug policy and
never mentioned a waiting list for tenancy.

48.     Ms. Hess stated that, once the tester submitted an application and a security deposit, a housing unit would be reserved for the tester. Ms. Hess provided the tester with a blank application and highlighted the fields that the tester should fill in. Ms. Hess also provided the tester with a note showing her estimated tenant-portion of rent for each available housing unit and security deposit amounts.

49.     Before the white tester left, Mr. Haynes stated that he thought the tester and her daughter "would be happy" there.

## 2.     The African-American Tester's Visit

50.     The next day, on November 5, 2015, a female African-American tester visited the Housing Authority to seek housing.

51.     When the African-American tester arrived in the office, Ms. Hess greeted her and asked how she could help the tester. The tester responded that she was seeking housing.

52.     Ms. Hess stated that the Housing Authority did not have any units available at that time.

53.     While Ms. Hess was speaking with the tester, Mr. Haynes entered the office and called Ms. Hess outside to speak with him. Mr. Haynes saw the African-American tester in the office but did not greet her, converse with her, or offer to show her any available housing units.

54.     Mr. Haynes and Ms. Hess spoke for approximately fifteen to twenty minutes outside, while the African-American tester waited alone.

55.     When Ms. Hess returned, she told the African-American tester that the Housing Authority was a "zero drug tolerance facility."

56.     Ms. Hess asked the African-American tester what kind of housing the tester sought. The tester said that she was seeking any available unit. Ms. Hess inquired about how many people would live with the African-American tester. The tester responded that her grandchild would reside with her.

57.     Ms. Hess told the African-American tester that she would be required to apply for a two-bedroom unit if she lived with her grandchild.

58.     Ms. Hess's statement to the African-American tester, as described above, that she would be required to apply for a two-bedroom unit contradicts the Housing Authority's HUD-approved ACOP that permits two people to occupy a one-bedroom unit and explicitly allows for a guardian with a child to reside in a one-bedroom unit.

59.     Ms. Hess quoted general rent rates to the African-American tester, but did not offer her a calculation of her tenant portion based on her income. Ms. Hess identified the additional financial obligations of tenancy, including water, gas, and electric, but said that she could not estimate those expenses.

60.     Ms. Hess provided a blank application to the African-American tester, but she did not highlight fields to fill in on the application. Ms. Hess told the tester she could return the application at her convenience.

61.     Ms. Hess then told the African-American tester that when they received her application they would contact her when an apartment became available.

62.     Neither Ms. Hess nor Mr. Haynes showed the African-American tester any housing units.

### C.  Liability of Defendant Housing Authority and Harm

63.     The acts and omission of Mr. Haynes and Ms. Hess described in this Complaint took place while they were employees and/or agents of the Housing Authority and were within the course and scope of that employment and/or agency. The Housing Authority is therefore liable for Mr. Haynes's and Ms. Hess's conduct.

64.     As a result of Defendants' unlawful conduct as described in this Complaint, Ms. Zackery and A.Z. suffered a loss of housing opportunities, emotional distress, and other harms.

65.     As a result of Defendants' discriminatory conduct, Legal Aid diverted its resources away from other planned organizational activities and expended staff time and other resources investigating Ms. Zackery's complaint, conducting testing at the Housing Authority, helping Ms. Zackery file a complaint with HUD, and assisting Ms. Zackery in communicating with HUD after she filed her complaint.

### D.   Defendant Housing Authority is a Recipient of Federal Financial Assistance

66.     At all relevant times described herein, the Housing Authority has been and continues to be a recipient of federal financial assistance from HUD.

67.     As a condition of receiving federal financial assistance, the Housing Authority, through its authorized representatives, certified that it agreed to comply with all requirements imposed by Title VI of the Civil Rights Act.

68.     Title VI and HUD's implementing regulation provide that "[n]o person in the United States shall, on the ground of race . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d; 24 C.F.R. § 1.4.

69.     The Housing Authority is responsible for ensuring that it is conducting its housing program in a non-discriminatory manner and that its employees and agents comply with the requirements of Title VI and its implementing regulation.

## HUD ADMINISTRATIVE PROCESS

### A.   Fair Housing Act

70.     On or about March 1, 2016, Ms. Zackery and Legal Aid timely filed a joint complaint with HUD regarding Defendants' actions. On April 15, 2016, HUD bifurcated the complaints and Legal Aid clarified its separate complaint on April 27, 2016. Thereafter, Ms. Zackery and Legal Aid amended their complaints.

71.     In accordance with 42 U.S.C. § 3610, HUD conducted and completed an investigation of the complaints, attempted conciliation without success, and prepared a final investigative report.

72.     Based on the information gathered in its investigation, HUD determined, under 42 U.S.C. § 3610(g)(1), that reasonable cause existed to believe that Defendants engaged in illegal discriminatory housing practices in violation of the Fair Housing Act.

73.     On September 24, 2020, the Secretary of HUD issued a Charge of Discrimination ("HUD Charge") for both Ms. Zackery and Legal Aid under 42 U.S.C. § 3610(g)(2)(A), charging the above-named Defendants with engaging in unlawful

discrimination on the basis of race in violation of the FHA. Specifically, HUD's Charge

of Discrimination charged the above-named Defendants with violating 42 U.S.C. §§

3604(a), (b), and (d) of the FHA for its disparate treatment of African-American

prospective renters as described above.

74.     On October 15, 2020, Legal Aid elected to have the claims asserted in the

HUD Charge resolved in a civil action filed in federal district court in accordance with

42 U.S.C. § 3612(a). On October 16, 2020, an Administrative Law Judge issued a Notice

of Election to Proceed in United States Federal District Court and terminated the

administrative proceeding for both Ms. Zackery and Legal Aid on the HUD Charge.

75.     Following the notice of election, the Secretary authorized the Attorney

General to commence a civil action pursuant to 42 U.S.C. § 3612(o).

76.     On November 9, 2020, the Defendants and the United States entered into a

written tolling agreement extending the deadline for the United States to commence a

civil action until December 15, 2020.

**B.    Title VI**

77.     On September 10, 2019, HUD notified the Housing Authority that it had

failed to comply with Title VI and its implementing regulation, and that HUD would

refer the Title VI matter to the Department of Justice for enforcement if compliance could

not be achieved by voluntary means.

78.     On September 28, 2020, HUD, concluding that it was unable to voluntarily

resolve the Title VI allegations, issued a Letter of Determination of Non-Compliance to

the Housing Authority, notifying it that HUD could refer the Title VI matter to the

Department of Justice for enforcement.

79.     On October 30, 2020, HUD referred the Title VI matter to the Department

of Justice for enforcement pursuant to 24 C.F.R. § 1.8(a) and 28 C.F.R. § 50.3.

80.     The United States has determined that all administrative requirements have

been exhausted and that securing compliance cannot be achieved by voluntary means.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### DEFENDANTS' VIOLATIONS OF THE FAIR HOUSING ACT

81.     The United States re-alleges and herein incorporates by reference the

allegations set forth in paragraphs 1–80 above.

82.     By the conduct set forth above, the Defendants have:

a.  Refused to negotiate for the rental of, or otherwise made unavailable or

denied dwellings to persons because of race, in violation of the Fair

Housing Act, 42 U.S.C. § 3604(a); and

b.  Discriminated in the terms, conditions, or privileges of rental of a

dwelling, or in the provision of services or facilities in connection

therewith, because of race, in violation of the Fair Housing Act, 42

U.S.C. § 3604(b); and

c.  Represented, because of race, that dwellings were not available for

rental when such dwellings were in fact so available, in violation of the

Fair Housing Act, 42 U.S.C. § 3604(d).

14

83.     As a result of the Defendants' conduct, Ms. Zackery and her minor child, A.Z., have been injured and are "aggrieved person[s]" as defined by 42 U.S.C. § 3602(i).

84.     As a result of the Defendants' conduct, Legal Aid has been injured and is an "aggrieved person" as defined by 42 U.S.C. §§ 3602(i).

85.     The Defendants' conduct described above was intentional, willful, and taken in disregard for the rights of others.

## SECOND CLAIM FOR RELIEF:
## THE HOUSING AUTHORITY'S VIOLATION OF TITLE VI

86.     The United States re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1–85 above.

87.     The Housing Authority receives federal financial assistance for its program and activities from HUD.

88.     The Housing Authority has intentionally discriminated against prospective residents of the Housing Authority on the ground of race.

89.     The Housing Authority's intentional discrimination against individuals on the ground of race violates Title VI, 42 U.S.C. § 2000d, and HUD's implementing regulation, 24 C.F.R. § 1.4.

## THIRD CLAIM FOR RELIEF:
## THE HOUSING AUTHORITY'S VIOLATION OF TITLE VI ASSURANCES

90.     The United States re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1–89 above.

91.     The Housing Authority signed contractual assurance agreements with the United States that all of its programs and activities receiving federal financial assistance

would be conducted in compliance with all the requirements of Title VI and HUD's implementing regulation.

92.     The Housing Authority's intentional discrimination against individuals on the ground of race violates Title VI and its implementing regulation.

93.     The Housing Authority therefore has violated its Title VI contractual assurances.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, the United States prays that the Court enter an order that:

a.  Declares that the Defendants' discriminatory conduct violates the Fair Housing Act and that the Housing Authority's conduct violated Title VI of the Civil Rights Act of 1964;

b.  Enjoins the Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of them from:

    i.   Discriminating against any person because of race in any aspect of the rental of a dwelling;

    ii.  Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct; and

    iii. Failing or refusing to take such affirmative steps to prevent the recurrence of any discriminatory conduct in the future and to

eliminate, to the extent practicable, the effects of the Defendants'
unlawful practices;

c.  Awards monetary damages to Ms. Zackery, individually and in her
representative capacity on behalf of her minor child, A.Z., and Legal Aid in
accordance with 42 U.S.C. §§ 3612(o)(3), 3613(c), and 42 U.S.C. §§ 2000d
to 2000d-7; and

d.  Awards such additional relief as the interests of justice may require.

## <u>DEMAND FOR JURY TRIAL</u>

The United States hereby demands a trial by jury of all issues so triable pursuant
to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,                    Dated: December 15, 2020

WILLIAM P. BARR
Attorney General

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement

*/s/ Lori K. Wagner*
Timothy J. Moran
Deputy Chief
Lori K. Wagner (NY Bar No. 2124857)
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. –  4CON
Washington, DC 20530
Phone: (202) 305-3107

Fax: (202) 514-1116
E-mail: Lori.Wagner@usdoj.gov

*/s/ Alyssa C. Lareau*
(Signed by Filing Attorney with
permission of Attorney)
Anna Medina
Acting Deputy Chief
Alyssa C. Lareau (DC Bar No. 494881)
Trial Attorney
Federal Coordination and Compliance Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. –  4CON
Washington, DC 20530
Phone: (202) 305-2994
E-mail: Alyssa.Lareau@usdoj.gov

*Attorneys for Plaintiff United States of America*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lori K. Wagner, U.S. Department of Justice
950 Pennsylvania Ave., NW, Washington DC 20530
(202-305-3107)

## DEFENDANTS

Housing Authority of the Town of Lone Wolf, David M. Haynes, and Myrna Hess

County of Residence of First Listed Defendant    Kiowa County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Jim Hines, Counsel for Housing Authority of the Town of Lone Wolf
611 East Clay St., Cordell, OK 73632 (580-530-1671)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | **PERSONAL INJURY** ☐ 365 Personal Injury - Product Liability | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights ☐ 830 Patent | ☐ 430 Banks and Banking ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 840 Trademark | Corrupt Organizations ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud ☐ 371 Truth in Lending | **LABOR** ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** Exchange |
| ☐ 190 Other Contract | Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI ☐ 895 Freedom of Information |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition | **IMMIGRATION** ☐ 462 Naturalization Application | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
The Fair Housing Act, 42 U.S.C. §§ 3601 et seq., & Title VI, 42 U.S.C. §§ 2000d to 2000d-7

Brief description of cause:
Violations of the Fair Housing Act and Title VI for discrimination based on race

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE    12/15/2020

SIGNATURE OF ATTORNEY OF RECORD    /s/ Lori K. Wagner

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____